[No. D032070. Fourth Dist., Div. One. Apr. 5, 1999.]

PHILIP MORRIS INCORPORATED et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
U.A. LOCAL 467 HEALTH AND WELFARE TRUST FUND et al., Real
Parties in Interest.

**COUNSEL**

Munger, Tolles & Olson, Daniel P. Collins and Martin D. Bern for Petitioner Philip Morris Incorporated.

Howard, Rice, Nemerovski, Canady, Falk & Rabkin and Howard J. Escher III for Petitioner R.J. Reynolds Tobacco Company.

Pillsbury, Madison & Sutro and Anthony R. Delling for Petitioner Brown & Williamson Tobacco Corporation.

Loeb & Loeb and Daniel G. Murphy for Petitioner Council for Tobacco Research-U.S.A., Inc.

Shook, Hardy & Bacon and Richard D. Shively for Petitioner Lorillard Tobacco Company.

Crosby, Heafey, Roach & May and Mary C. Oppedahl for Petitioner Tobacco Institute, Inc.

Skadden, Arps, Slate, Meagher & Flom and Alan D. Hamilton for Petitioner United States Tobacco Company.

Chadbourne & Parke and Daniel S. Silverman for Petitioner British American Tobacco (Investments) Ltd.

Krieg, Keller, Sloan, Reilley & Roman and Stanley G. Roman for Petitioner Hill & Knowlton, Inc.

No appearance for Respondent.

Cotchett, Petre & Simon, Joseph W. Cotchett, Marie Seth Weiner, Niall P. McCarthy, Gwendolyn R. Giblin; McCarthy, Johnson & Miller, Raphael Shannon; Beeson, Tayer & Bodine and Geoffrey Piller for Real Parties in Interest.

---

OPINION

**KREMER, P. J.**—In this coordination proceeding, defendants Philip Morris Incorporated et al.[1] seek extraordinary relief directing the superior court to set aside an order granting the motion for peremptory disqualification of the coordination trial judge filed by plaintiffs U.A. Local No. 467 Health and Welfare Trust Fund (Local No. 467) et al.[2] (Code Civ. Proc.,[3] § 170.6; Cal.

---

[1]Other defendants are R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Lorillard Tobacco Company; Council for Tobacco Research-U.S.A., Inc.; Tobacco Institute, Inc.; United States Tobacco Company; British American Tobacco (Investments) Ltd.; and Hill & Knowlton, Inc.

[2]Other plaintiffs are Newspaper Periodical Drivers Local 921 San Francisco Newspaper Agency Health and Welfare Fund; Teamsters Benefit Trust Fund; U.A. Local No. 159 Health and Welfare Trust Fund; U.A. Local 343 Health and Welfare Trust Fund; Bay Area Automotive Group Welfare Fund; Sign, Pictorial and Display Industry Welfare Fund; San Francisco Newspaper Publishers and Northern California Newspaper Guild Health and Welfare Trust; and Pipe Trades District Council No. 36 Health and Welfare Trust Fund.

[3]All statutory references are to the Code of Civil Procedure unless otherwise specified.

Rules of Court,[4] rule 1515.) Defendants contend the court should have concluded as a matter of law that those plaintiffs' peremptory challenge to the coordination trial judge constituted an unlawful second peremptory challenge in light of another plaintiff's precoordination peremptory challenge to another judge. We deny defendants' petition for extraordinary relief.

## I

### PROCEDURAL BACKGROUND

Various plaintiffs filed independent actions in different counties to recover health care costs for allegedly tobacco-related illnesses.

In December 1997, in one of those independent actions, plaintiff Screen Actors Guild-Producers Health Plan (SAG) exercised a peremptory challenge under section 170.6 against Judge Kuhl of the Los Angeles County Superior Court.

In April 1998, Local No. 467, a plaintiff in another of those independent actions, filed a petition for coordination of its action with 16 other tobacco-related actions then pending in California including SAG's action.

In July 1998, the Judicial Council assigned Judge Saldamando of the San Francisco County Superior Court as the coordination motion judge to hear Local No. 467's petition for coordination.

In August 1998, Judge Saldamando ordered coordination of 12 of the 17 actions including SAG's. (§ 404.) Later that month, the Judicial Council assigned Judge May of the San Diego County Superior Court as the coordination trial judge.

## II

### PLAINTIFFS' CHALLENGE TO JUDGE MAY

In September 1998, within 20 days after service of the order assigning Judge May as the coordination trial judge, plaintiffs in 9 of the coordinated actions other than SAG's filed a motion for peremptory disqualification of Judge May. (§ 170.6; rule 1515.) As of that time, no other party had filed a peremptory challenge to any assigned judge in this coordination proceeding. However, opposing plaintiffs' disqualification motion, defendants asserted such motion was an attempt to exercise an unauthorized second peremptory

---

[4]All rule references are to the California Rules of Court unless otherwise specified.

challenge in SAG's case.[5] After hearing, Judge May concluded SAG's precoordination peremptory challenge to Judge Kuhl in one of the independent actions later coordinated did not preclude this postcoordination peremptory challenge by plaintiffs. Thus, Judge May allowed plaintiffs' peremptory challenge and granted their motion for his disqualification. In his oral ruling, Judge May stated rule 1515 "suggests to the court that there should be the right to make a challenge at the coordination time frame" and thus in this coordinated proceeding plaintiffs had "the right to have a new challenge." In his written order, Judge May stated rule 1515 "allows a peremptory challenge to be filed regardless of the procedural and substantive history, of the included actions, which occurred prior to the coordination. [¶] . . . Specifically, the fact that a CCP § 170.6 challenge was filed against a trial judge by a plaintiff in an included action prior to the coordination does not preclude a post-coordination motion to disqualify."

Defendants seek extraordinary relief directing the superior court to vacate the order granting plaintiffs' motion for peremptory disqualification of Judge May and to enter a new order denying such motion. We issued an order to show cause and heard oral argument.

### III

### DISCUSSION

### A

### *The Law*

Section 404.7 provides: "*Notwithstanding any other provision of law*, the Judicial Council shall provide by rule the practice and procedure for coordination of civil actions in convenient courts, including provision for giving notice and presenting evidence." (Italics added.)[6] Section 404.7 "is an express authorization sufficiently broad to empower the council to formulate its own rules for judicial challenges independent of the provisions of section 170.6." (*Industrial Indemnity Co.* v. *Superior Court* (1989) 214 Cal.App.3d 259, 264 [262 Cal.Rptr. 544].) " 'The practical effect of such a grant of power is to remove any restraints of statutory consistency on the Judicial Council's rules.' " (*Id.* at p. 263.) In that vein, we have recognized that

---

[5]Defendants have not asserted that, if authorized, plaintiffs' peremptory challenge to Judge May was untimely.

[6]Similarly, section 404.9 provides in relevant part: "*Notwithstanding any other provision of law*, the Judicial Council shall provide by rule the practice and procedure for the transfer or coordination of civil actions in convenient courts under this chapter, including provision for giving notice and presenting evidence." (Italics added.)

"section 404.7 accords to the Judicial Council the power by rule to order the practice for coordinated actions, 'notwithstanding any other provision of law.' It has been noted that this provision gives the Judicial Council broad discretion to adopt procedures which will foster the goals of coordination, and that such procedures may reconcile apparent inconsistencies in the statute." (*McGhan Medical Corp.* v. *Superior Court* (1992) 11 Cal.App.4th 804, 812 [14 Cal.Rptr.2d 264]; see also *Farmers Ins. Exchange* v. *Superior Court* (1992) 10 Cal.App.4th 1509, 1511-1512 [13 Cal.Rptr.2d 449].) As authorized by section 404 et seq., the Judicial Council enacted rule 1500 et seq. (*Farmers Ins. Exchange* v. *Superior Court, supra,* at p. 1512.)

Rule 1504(a) provides: "Except as otherwise provided in these rules, all provisions of law applicable to civil actions generally apply regardless of nomenclature to an action included in a coordination proceeding if they would otherwise apply to such action without reference to this rule. *To the extent that these rules conflict with such provisions, these rules shall prevail as provided by Section 404.7 of the Code of Civil Procedure.*" (Italics added.)

Rule 1515 provides: "Any motion or affidavit of prejudice regarding an assigned judge shall be submitted in writing to the assigned judge within 20 days after service of the order assigning that judge to the coordination proceeding. All plaintiffs or similar parties in the included or coordinated actions shall constitute a side and all defendants or similar parties in such actions shall constitute a side for purposes of applying Code of Civil Procedure section 170.6."[7]

---

[7]Rule 1501(a) defines "[a]ction" as "any civil action or proceeding subject to coordination or affecting an action that is subject to coordination."

Rule 1501(c) defines "[a]ssigned judge" as "any judge assigned by the Chairman of the Judicial Council pursuant to Section 404 or 404.3 of the Code of Civil Procedure, including a 'coordination motion judge' and a 'coordination trial judge.' "

Rule 1501(e) defines "[c]oordinated action" as "any action that has been ordered coordinated with one or more other actions pursuant to Chapter 2 (commencing with Section 404) of Title 4 of Part 2 of the Code of Civil Procedure and pursuant to these rules."

Rule 1501(g) defines "[c]oordination motion judge" as "an assigned judge designated pursuant to Section 404 of the Code of Civil Procedure to determine whether coordination is appropriate."

Rule 1501(h) defines "[c]oordination proceeding" as "any procedure authorized by Chapter 2 (commencing with Section 404) of Title 4 of Part 2 of the Code of Civil Procedure and by these rules."

Rule 1501(i) defines "[c]oordination trial judge" as "an assigned judge designated pursuant to Section 404.3 of the Code of Civil Procedure to hear and determine coordinated actions."

Rule 1501(k) defines "[i]ncluded action" as "any action or proceeding included in a petition for coordination."

Rule 1501(r) defines "[s]ide" to mean "all parties to an included or coordinated action who have a common or substantially similar interest in the issues, as determined by the assigned

## B

### *Analysis*

■ The Judicial Council adopted rule 1515 under the authority granted by the Legislature in section 404.7. (*Farmers Ins. Exchange* v. *Superior Court, supra,* 10 Cal.App.4th at p. 1511.) Indeed, there is not "any question that the Judicial Council was authorized to enact rule 1515." (*Id.* at p. 1512.) Defendants acknowledge that section 404.7 authorized the Judicial Council to "alter the restrictions" of section 170.6 as applied to coordination proceedings and that the Judicial Council exercised such authority in promulgating rule 1515. However, although acknowledging the Judicial Council's power to establish a right to a fresh peremptory challenge at the coordination stage, defendants contend that in adopting rule 1515 the Judicial Council did not in fact create any such right. We disagree.

Defendants contend rule 1515 says nothing about whether a right of peremptory challenge actually exists in any particular context but instead with respect to coordination proceedings simply establishes a time limit for challenges different than section 170.6's limitations.[8] Hence, defendants contend that under the "plain language" of section 170.6, subdivision (3),[9] and rule 1515, plaintiffs' peremptory challenge to Judge May was an unauthorized second peremptory challenge filed by plaintiffs' "side." Specifically, defendants assert section 170.6, subdivision (3) limits each side in any one action to only one peremptory challenge against a trial judge; rule 1515 provides that all plaintiffs in a coordinated proceeding constitute a side for purposes of a section 170.6 challenge; and given SAG's precoordination peremptory challenge in one of the actions now coordinated, plaintiffs' peremptory challenge granted by Judge May necessarily extended to the SAG action and effectively constituted an impermissible second peremptory challenge by plaintiffs' "side" in the SAG action. Accordingly, defendants conclude Judge May erred as a matter of law in granting such challenge. However, as we shall explain, rule 1515 contemplates and controls the exercise of any challenge to any assigned judge in a coordination proceeding including peremptory challenges under section 170.6.

---

judge for the purpose of appointing any liaison counsel, of allotting peremptory challenges in jury selection, or for any other appropriate purpose."

[8]Section 170.6, subdivision (2) establishes various time requirements applicable to peremptory challenges.

[9]Section 170.6, subdivision (3) at pertinent times provided in relevant part: "Under no circumstances shall a party or attorney be permitted to make more than one such motion in any one action or special proceeding pursuant to this section; and in actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding."

Rule 1515's first sentence means that when a coordination motion judge or a coordination trial judge is assigned, the parties have 20 days after service of such assignment order to challenge the respective assigned judge whether peremptorily or otherwise. (See *Stone* v. *Superior Court* (1994) 25 Cal.App.4th 1144, 1146-1147 [31 Cal.Rptr.2d 56].) Rule 1515's second sentence means that once a coordination motion judge or a coordination trial judge is assigned, the plaintiff and defense sides in any included action or coordinated action, respectively, are entitled to only one section 170.6 peremptory challenge each. (*Stone* v. *Superior Court, supra,* at pp. 1146-1147.) That limitation on peremptory challenges following the filing of a petition for coordination reflects an acknowledgment that a string of challenges might otherwise ensue so as to delay unduly the resolution of the coordinated actions.

Thus, read in its entirety in light of rule 1501's definitions, rule 1515 provides that each side in a coordination proceeding is entitled one section 170.6 peremptory challenge to disqualify an assigned coordination trial judge within 20 days after service of the assignment order. For purpose of any such peremptory challenge, there are by rule definition no "coordinated actions" and thus no "sides" in a "coordination proceeding" until the various "included actions" in a petition for coordination are coordinated. Here, when plaintiffs filed their motion under section 170.6 to disqualify peremptorily the coordination trial judge (Judge May), no other party had filed a peremptory challenge to any coordination trial judge in this coordination proceeding. Since rule 1515 takes effect only upon filing of a petition for coordination, SAG's peremptory challenge to Judge Kuhl in SAG's independent action made before any such petition was filed did not constitute a peremptory challenge by a "side" in a "coordination proceeding." Instead, plaintiffs' peremptory challenge to Judge May was the first peremptory challenge by plaintiffs' "side" to a coordination trial judge in this coordination proceeding.

Our conclusion is buttressed by case law arising in various contexts indicating that with respect to coordination proceedings, the procedures and practices established by rule 1515 are to prevail over any inconsistent, additional or limiting provisions of the general disqualification statutes, to wit, sections 170.1 through 170.6. In *Farmers Ins. Exchange* v. *Superior Court, supra,* 10 Cal.App.4th 1509, the appellate court reversed the denial of defendant Farmers' section 170.6 challenge to a coordination trial judge. (*Farmers Ins. Exchange* v. *Superior Court, supra,* at p. 1510.) Citing section 170.6, subdivision (2), the plaintiffs in that case contended Farmers' challenge to the coordination trial judge was untimely because before coordination such judge had ruled on contested matters in some of the actions

eventually coordinated. (*Farmers Ins. Exchange* v. *Superior Court, supra,* at p. 1511.) The appellate court noted that the plaintiffs "accuse Farmers of judge shopping because it challenged the very judge who previously made rulings adverse to its interests on issues common to others of the coordinated cases. They emphasize that even though the coordinated actions involve different plaintiffs, all of them are members of the same class and the relief sought is virtually identical." (*Ibid.*) However, in rejecting those contentions, the appellate court stated: "The vice, however, in these arguments is that they ignore rule 1515, promulgated by the Judicial Council in accordance with the authority granted it by the Legislature in section 404.7. Both the statutory scheme and rules contemplate that the status of actions proposed for coordination often will differ markedly. The 'relative development' of a case, including the nature and extent of its pretrial rulings, is a factor to be evaluated by the judge assigned to rule on the coordination motion. [Citations.] Yet, *rule 1515 unequivocally makes the Farmers' challenge timely, and provides no exception for coordinated actions which include cases in which contested issues had been previously decided.* There being no basis for implying such an exception to rule 1515, we decline to do [so]." (*Id.* at pp. 1511-1512, italics added, fn. omitted.)[10] Similarly, notwithstanding any language in section 170.6 to the contrary, rule 1515 made plaintiffs' peremptory challenge here timely and provided no exception denying the right to a peremptory challenge by the plaintiffs' side in a coordination proceeding where a precoordination peremptory challenge had been exercised by a plaintiff in an independent action that later became one of the coordinated actions. (*Farmers Ins. Exchange* v. *Superior Court, supra,* at pp. 1511-1512.) Further, like the appellate court in *Farmers Ins. Exchange* v. *Superior Court* we decline to imply any such exception. (*Ibid.*)

Case law also indicates that as applied to peremptory challenges to assigned judges in coordination proceedings, rule 1515 may in some instances be more permissive than the provisions of section 170.6. For example, in *Stone* v. *Superior Court, supra,* 25 Cal.App.4th 1144, in concluding the trial court erred in deeming untimely a section 170.6 peremptory challenge to the coordination trial judge, the appellate court permitted such challenge even though the judge had earlier acted without challenge as the coordination motion judge. (*Stone* v. *Superior Court, supra,* at p. 1147.) Noting the "statutory scheme for coordination and the rules of court implementing that scheme provide for two separate assignments," the appellate

---

[10]In *School Dist. of Okaloosa County* v. *Superior Court* (1997) 58 Cal.App.4th 1126 [68 Cal.Rptr.2d 612], the appellate court characterized *Farmers Ins. Exchange* v. *Superior Court, supra,* 10 Cal.App.4th 1509, as holding that "*the coordination order provides a new time window for challenges,*" notwithstanding that the assigned judge may have already decided contested issues common to all coordinated cases." (*School Dist. of Okaloosa County* v. *Superior Court, supra,* at p. 1135, citing *Farmers Ins. Exchange* v. *Superior Court, supra,* at p. 1511, italics added.)

court stated that "to be consistent with the statutory scheme, the term 'assigned judge' in rule 1515 must be read as the judge assigned for the particular purpose, i.e., either to determine whether coordination is appropriate or to hear and determine the coordinated actions. *Thus, a party challenging the assignment of a judge pursuant to Code of Civil Procedure section 170.6 has 20 days after the specific assignment to file an affidavit of prejudice.*" (*Ibid.*, italics added.) Similarly, despite SAG's precoordination peremptory challenge to the judge in its independent action and notwithstanding any language in section 170.6 to the contrary, rule 1515 entitled plaintiffs in this later coordination proceeding to file a motion to disqualify Judge May peremptorily within 20 days after service of the order assigning him as the coordination trial judge. (*Stone* v. *Superior Court, supra,* at p. 1147.)

Finally, in other instances application of rule 1515 to peremptory challenges to assigned judges in coordination proceedings may be more restrictive than the provisions of section 170.6. For example, in *Industrial Indemnity Co.* v. *Superior Court, supra,* 214 Cal.App.3d 259, the appellate court declined to permit a challenge to the coordination trial judge by defendants in cases that under rule 1544 had been "add[ed ] on" to an existing coordination proceeding. The appellate court observed: "There is no provision in rule 1544 for a peremptory challenge by a party to an add-on case. Thus, unless section 170.6 itself applies to add-on parties, any peremptory challenge by such parties will be untimely. The effect of the rules governing coordination cases is to exclude add-on parties from the right to peremptorily challenge the coordination trial judge." (*Industrial Indemnity Co.* v. *Superior Court, supra,* at p. 263.) Hence, noting ". . . the authority given to the Judicial Council over coordinated actions is broad enough to empower the Judicial Council to exclude parties from the right to exercise a section 170.6 challenge" (*ibid.*), the appellate court concluded the challenge by the add-on defendants was untimely as not brought within 20 days of notice of assignment of the coordination trial judge even though the add-on defendants did not become parties to the coordination proceeding until after expiration of such 20-day period and even though section 170.6 might have given those defendants the right and opportunity to exercise a peremptory challenge in a noncoordination proceeding. (*Industrial Indemnity Co.* v. *Superior Court, supra,* at pp. 261, 263-264.) However, as discussed, rule 1515 as promulgated by the Judicial Council contains no provision precluding plaintiffs in a coordination proceeding from exercising a section 170.6 peremptory challenge against the coordination trial judge where one of those plaintiffs has made a precoordination peremptory challenge to a judge in such plaintiff's independent action that has later become a coordinated action.

In sum, rule 1515 afforded plaintiffs in this coordination proceeding the right to challenge and move to disqualify peremptorily under section 170.6 the assigned coordination trial judge (Judge May) within 20 days of service of the order of his assignment. For purposes of rules 1501 and 1515, no "coordination proceeding" and no plaintiffs' "side" existed here until Local No. 467 filed its petition for coordination. SAG's precoordination peremptory challenge to Judge Kuhl was made in SAG's independent action before such action became an "included action" or "coordinated action" in a "coordination proceeding" and thus did not constitute a peremptory challenge by a "side" in a "coordination proceeding." Hence, since plaintiffs' challenge to Judge May was timely and not precluded by SAG's precoordination challenge to Judge Kuhl in SAG's then independent action, Judge May was properly disqualified.

## IV

### DISPOSITION

The petition is denied. Parties to bear their own costs on appeal.

Haller, J., and McDonald, J., concurred.