55 Cal.Rptr.3d 708 (2007)
148 Cal.App.4th 489
In re NEEDLES CASES.
Jane Doe 8015, et. al., Petitioners,
v.
The Superior Court, Respondent,
SmithKline Beecham Corp. et. al., Real Parties in Interest.
No. H030303.
Court of Appeal of California, Sixth District.
March 9, 2007.
Smoger & Associates and Gerson H. Smoger, Oakland, for Petitioners.
*709 No Appearance for Respondent.
Drinker, Biddle & Reath and Charles F. Preuss, Alan J. Lazarus, Thomas W. Pulliam, Jr. and Michelle A. Childers, San Francisco, for Real Parties in Interest.
ELIA, Acting P.J.
This petition for a writ of mandamus arises from a coordinated action against the real parties in interest, SmithKline Beecham Corporation and SmithKline Beecham Clinical Laboratories, Inc. (collectively, SmithKline). The only issue raised in the petition is whether a party in a coordinated action who successfully challenges a summary judgment on appeal may thereafter exercise a peremptory challenge of the judge presiding over the coordinated proceedings. We conclude that such challenges are permitted under Code of Civil Procedure section 170.6, subdivision (a)(2), notwithstanding the time limits specified in California Rules of Court, rule 3.516.

Background
After one of SmithKline's phlebotomists was terminated for reusing needles to draw blood from patients, petitioner Jane Doe 8015 was found to have acquired HIV and petitioner Gerald Orzoff may have acquired and cleared Hepatitis C. In April 2000, petitioners sued SmithKline, which owned and operated the laboratory where their blood had been drawn, for negligence, battery, and related claims. In their lawsuits petitioners claimed they were infected (or in Orzoff's case, at least subjected to emotional distress and "disruption" of his life) by the phlebotomist's conduct.
The Honorable Leslie C. Nichols granted SmithKline's summary judgment motion. In an unpublished opinion (H028246) we found summary judgment inappropriate because the trial court had improperly excluded petitioners' expert evidence while admitting similar evidence proffered by SmithKline, the court had improperly weighed the evidence, and SmithKline had failed to meet its initial burden on the issue of causation. Triable issues of fact existed, thus requiring reversal.
Following remand, petitioners filed a motion under Code of Civil Procedure section 170.6 (hereafter, section 170.6) to disqualify Judge Nichols. In a declaration submitted with the motion, petitioners' counsel stated his belief that the judge was prejudiced against him or petitioners and that petitioners would not be able to receive a fair trial. SmithKline opposed the motion, arguing that there was no evidence that this judge would not be fair and follow the law. SnuKline pointed out that Judge Nichols had presided over this case for more than six years; transferring the case to a judge unfamiliar with the facts and issues would be "an inefficient use of judicial resources and, therefore, contrary to the purposes of coordination." SmithKline urged the court to follow McLaughlin v. National Union Fire Ins. Co. (1994) 23 Cal.App.4th 1132, 29 Cal.Rptr.2d 559 rather than Paterno v. Superior Court (2004) 123 Cal.App.4th 548, 555, 20 Cal. Rptr.3d 282. According to SmithKline, the McLaughlin case commanded deference to the purposes and procedures of coordinated proceedings, whereas it was only in dicta that Paterno permitted a peremptory challenge after remand in a coordinated proceeding: Judge Nichols agreed with SmithKline and struck petitioners' section 170.6 challenge.
This petition followed. We issued a temporary stay of the proceedings and an order to show cause to review the judge's ruling on the disqualification motion.

Discussion

1. Scope and Standard of Review
In several published decisions appellate courts have reviewed denials of *710 peremptory challenges for abuse of discretion. "A trial court abuses its discretion when it erroneously denies as untimely a motion to disqualify a judge pursuant to section 170.6." (See, e.g., Zilog, Inc. v. Superior Court (2:001) 86 Cal.App.4th 1309, 1315, 104 Cal.Rptr.2d 173; Jonathon M. v. Superior Court (2006) 141 Cal.App.4th 1093, 1098, 46 Cal.Rptr.3d 798) Another court, however, has observed that "[i]n deciding a section 170.6 motion, the trial court has no discretion. We think it appropriate to review a decision . . . denying a peremptory challenge under section 170.6 as [a question] of law. Therefore we review under the nondeferential de novo standard." (Ziesmer v. Superior Court (2003) 107 Cal.App.4th 360, 363, 132 Cal. Rptr.2d 130.) In this matter the independent standard of review is appropriate here, particularly since the correctness of the disqualification order turns on the application of law to undisputed facts, Nevertheless, under either standard we find error.

2. Statutory Background
Section 170.6 sets forth the procedures for and limitations on disqualification of a judge upon a peremptory challenge for prejudice toward a party or the party's attorney. That party or the party's attorney "may establish this prejudice by an oral or written motion without notice supported by affidavit or declaration under penalty of perjury or an oral statement under oath that the judge . . . before whom the action or proceeding is pending or to whom it is assigned is prejudiced against any party or attorney or the interest of the party or attorney so that the party or attorney cannot or believes that he or she cannot have a fair and impartial trial or hearing before the judge. . . .[¶] (3) . . . Except as provided in this section, no party or attorney shall be permitted to make more than one such motion in any one action or special proceeding pursuant to this section; and in actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding."
"The right to exercise a peremptory challenge under Code of Civil Procedure section 170.6 is a substantial right and an important part of California's system of due process that promotes fair and impartial trials and confidence in the judiciary  By enacting section 170.6, the Legislature guaranteed litigants the right to automatically disqualify a judge based solely on a good faith belief in prejudice; proof of actual prejudice is not required. [Citation.]" (Stephens v. Superior Court (2002) 96 Cal.App.4th 54, 61-62, 116 Cal. Rptr.2d 616; accord, Davcon, Inc. v. Roberts & Morgan (2003) 110 Cal.App.4th 1355,1359, 2 Cal.Rptr.3d 782.) Accordingly, if a party or attorney makes a proper, timely challenge under this statute, disqualification is instantaneous and irrevocable; the judge has no discretion to reject it, inquire about the party's motives, or require a showing of prejudice. (§ 170.6, subd. (a)(3); see Davcon, Inc. v. Roberts & Morgan, supra, 110 Cal.App.4th at pp. 1359-1360, 2 Cal.Rptr.3d 782; Peracchi v. Superior Court (2003) 30 Cal.4th 1245, 1249, 1251, 135 Cal.Rptr.2d 639, 70 P.3d 1054; Brown v. Superior Court (1981) 124 Cal.App.3d 1059, 1062, 177 Cal.Rptr. 756.)
The provision at issue in the matter before us is contained in subdivision (a)(2) of the statute: "A motion under this paragraph may be made following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a *711 new trial on the matter. Notwithstanding paragraph (3), the party who filed the appeal that resulted in the reversal of a final judgment of a trial court may make a motion under this section regardless of whether that party or side has previously done so. The motion shall be made within 60 days after the party or the party's attorney has been notified of the assignment."
The focus of appellate decisions addressing this provision has often been on the meaning of "new trial" when the same judge "is assigned to conduct a new trial on the matter" after remand. None has directly disagreed with Stubblefield Const. Co. v. Superior Court (2000) 81 Cal. App.4th 762, 766, 97 Cal.Rptr.2d 121 (Stubblefield), which interpreted the "new trial" condition of section 170.6 to include first trials following reversal of summary judgment." (See also State Farm Mutual Automobile Ins. Co. v. Superior Court (2004) 121 Cal.App.4th 490, 501, 17 Cal.Rptr.3d 146 [as a practical matter summary judgment is the same as a full trial, in that it disposes of the case, often on the merits].) The Stubblefield court noted that section 170.6 had been amended in 1985 to "address the `concern . . . that a judge who had been reversed might prove to be biased against the party who [had] successfully appealed the judge's erroneous raling at the original trial.'" (81 Cal.App.4th at p. 765, 97 Cal.Rptr.2d 121, quoting Stegs Investments v. Superior Court (1991) 233 Cal.App.3d 572, 575-576, 284 Cal.Rptr. 495.) The court concluded, "Assuming, as the Legislature did, that a judge may react with a certain pique to the negative treatment of his or her decisions by an appellate court, this situation is obviously one in which the potential for bias exists." (81 Cal.App.4th at p. 766, 97 Cal.Rptr.2d 121.)
Thus, if the superior court is required to conduct retrial or a first trial on a factual or legal issue, subdivision (a)(2) of section 170.6 (hereafter, "section 170.6(a)(2)") permits a peremptory challenge of the judge whose judgment has been overturned on appeal. In contrast, "a pretrial motion that neither reached the merits of the controversy, nor terminated the action, was not a trial that would trigger section 170.6, subdivision (a)(2)." (Burdusis v. Superior Court (2005) 133 Cal.App.4th 88, 93, 34 Cal.Rptr.3d 575; see Stegs Investments v. Superior Court, supra, 233 Cal.App.3d at p. 576, 284 Cal. Rptr. 495 [1985 amendment applies if reversal requires actual retrial, even if on only one issue, rather than merely a ministerial act, such as recalculation of interest]; compare People v. Superior Court (Malay) (2001) 91 Cal.App.4th 391, 396, 109 Cal. Rptr.2d 897 [applying Stubblefield reasoning to allow peremptory challenge after reversal of dismissal based on statute of limitations]; First Federal Bank of California (2006) 143 Cal.App.4th 310, 314-315, 49 Cal.Rptr.3d 296 [reversal of erroneous ruling that bank was not entitled to attorney fees required "new trial" within the meaning of section 170.6 because it required factual and legal determinations based on evidence] with Geddes v. Superior Court (2005) 126 Cal.App.4th 417, 423-425, 23 Cal.Rptr.3d 857 [no entitlement to peremptory challenge where reversal and remand of summary judgment was for ministerial act of specifying reasons]; State Farm Mut. Auto. Ins. Co. v. Superior Court, supra, 121 Cal.App.4th 490, 502, 17 Cal.Rptr.3d 146 [motion to determine applicable law is not a trial for purposes of section 170.6] and Burdusis v. Superior Court, supra, 133 Cal.App.4th at p. 93, 34 Cal.Rptr.3d 575 [because denial of class certification did not address the merits or terminate the action, there has been no trial and remand did not require a retrial].)
*712 Under Stubblefield, this court's reversal of the summary judgment in H028246 would permit a section 170.6 challenge. There is no dispute that petitioners' motion was timely and was accompanied by the required declaration of a good faith belief that Judge Nichols was prejudiced against them. It is also clear that the judgment in H028246 was remanded for trial or other adjudication of legal or factual issues and not for a ministerial act. SmithKline does not question or even discuss the holding of Stubblefield. Instead, it emphasizes the procedural distinction of this case as a coordinated proceeding. In SimthKline's view, the application of section 170.6 in these circumstances would create "disruption and inefficiency," contrary to the "purposes of coordinated proceedings." For this reason, SmithKline maintains, California Rules of Court, rule 3.516 ("rule 3.516") must take precedence over conflicting section 170.6(a)(2).
Rule 3.516 allows the parties 20 days in which to challenge a judge assigned to a coordination proceeding.[1] In Paterno v. Superior Court, supra, 123 Cal.App.4th 548, 20 Cal.Rptr.3d 282, the Third District addressed the intersection of this procedural limitation with section 170.6(a)(2) in a case coordinating 37 separate actions and more than 3,000 petitioners suing two public entities. The appellate court upheld a jury finding that there was no dangerous condition of public property, but it reversed the judgment on the issue of inverse condemnation and remanded the case for another trial. A court trial then produced a defense judgment in favor of both public entities, but the appellate court reversed the judgment in favor of one defendant and remanded for determination of damages incurred by the "nonsample" plaintiffs. (Id. at p. 552, 20 Cal.Rptr.3d 282.) After remand, several of these nonsample plaintiffs filed a peremptory challenge of the judge under section 170.6(a)(2). The judge struck the challenge, however, reasoning that "section 170.6(a)(2) cannot trump the 20-day deadline specified in rule [3.516], because the Judicial Council, under the authority granted it by the Legislature to make rules applicable to coordination proceedings (§ 404.7), has provided that its coordination rules apply notwithstanding any conflict with other provisions of law applicable to civil actions (rule 13.504(a)])." (Id. at p. 553, 20 Cal.Rptr.3d 282.) The trial judge also believed that section 170.6(a)(2) was inapplicable because no "new trial" was required.
The appellate court first determined that section 170.6(a)(2) was not preempted by rule 3.516. It acknowledged past decisions holding that rule 3.516 prevails in the case of conflict with section 170.6. In one of those decisions, Industrial Indemnity Co. v. Superior Court (1989) 214 Cal. App.3d 259, 262 Cal.Rptr. 544, the First District had upheld the striking of a challenge by add-on plaintiffs who had joined the coordination proceeding more than two years after the judge's assignment. The Paterno court agreed with Industrial Indemnity that rule 3.516 permitted no additional challenges between the judge's assignment and the entry of judgment. "However, where a case proceeds to judgment and that judgment is reversed on appeal and remanded for a new trial the *713 landscape has changed significantly. The appellate disposition has, in effect, sent the players back to the starting gate, with instructions to start over. It is at this point that the Legislature has determined that a trial judge who has been reversed may be removed from the case if one party feels that judge's future impartiality might be compromised. There is no inconsistency between allowing a peremptory challenge after initial assignment of the coordination judge and again after a reversal on appeal, at least where a new trial must be held." (Paterno, supra, 123 Cal.App.4th at p. 555, 20 Cal.Rptr.3d 282.) The court therefore concluded that there was "no irreconcilable conflict, either in letter or spirit, between rule [3.516] and section 170.6(a)(2)." (Ibid.)
Application of the Paterno holding would defeat SmithKline's argument that rule 3.516 precludes petitioners' challenge in this case. SmithKline maintains, however, that a footnote in McLaughlin v. National Union Fire Ins. Co. (1994) 23 Cal.App.4th 1132, 29 Cal.Rptr.2d 559 is more apt. In that case, the First District reversed a judgment after a jury trial. In the footnote to the disposition the court declined the appellant's request to order the cause retried before a different judge. There was no reason to believe that the trial judge would be "other than fair and attentive to following the law"; and to accommodate the appellant's request would have been "contrary to the purposes and procedures for coordinated proceedings." (Id. at p. 1166, fn. 18, 29 Cal. Rptr.2d 559.)
The trial judge in the present case recognized that McLaughlin was not directly on point. He also ruled, however, that he was not bound by Paterno either, because the analysis was only dictum which did "not adequately address the myriad circumstances in which the displacement of the coordination trial judge would work against broad considerations, including judicial economy." We disagree. The Paterno conclusion was not dictum, but was entirely relevant and important to the ultimate outcome of the proceeding. Had the appellate court found rule 3.516 to be an insurmountable obstacle, it would not have been necessary to proceed to the second step of the analysis-whether a determination of damages is an issue requiring a "new trial" within the meaning of section 170.6(a)(2).[2]
Nor can we agree with SmithKline that "the very purposes of coordination would be threatened" by allowing a section 170.6(a)(2) challenge after a summary judgment reversal. The purposes underlying rule 3.516 and section 170.6(a)(2) are distinct. The 20-day time limit and the collective denomination of a "side" in rule 3.516 preclude a succession of challenges that would delay the efficient resolution of coordinated actions. (Philip Morris Inc. v. Superior Court (1999) 71 Cal.App.4th 116, 123, 83 Cal.Rptr.2d 671; see also Abelson v. National Union Fire Ins. Co. (1994) 28 Cal.App.4th 776, 786, 35 Cal. Rptr.2d 13 [purposes of coordination include promoting the efficient use of judicial resources].) On the other hand, as we observed earlier, the relevant provision in section 170.6(a)(2) addresses the concern that a judge who has been reversed might be biased against the party who successfully appealed the judge's erroneous ruling. (Stegs Investments v. Superior Court, supra, 233 Cal.App.3d at pp. 575-576, 284 *714 Cal.Rptr. 495; accord, Hendershot v. Superior Court (1993) 20 Cal.App.4th 860, 864, 24 Cal.Rptr.2d 645; People v. Superior Court (Malay), supra, 91 Cal.App.4th at p. 396, 109 Cal.Rptr.2d 897; Casden v. Superior Court (2006) 140 Cal.App.4th 417, 423, 44 Cal.Rptr.3d 474; First Federal Bank of California, supra, 143 Cal.App.4th at p. 313, 49 Cal.Rptr.3d 296; but see Peracchi v. Superior Court, supra, 30 Cal.4th at p. 1263, 135 Cal.Rptr.2d 639, 70 P.3d 1054 [resentencing is not a new trial; 1985 amendment was not intended to obviate "every possible situation in which it might be speculated that a court could react negatively to a reversal on appeal"].)
While the two provisions address different objectives, they are not incompatible. SmithKline does not explain how in this action judicial efficiency would be compromised by assigning another judge to the case. SmithKline's complaints about "delay and disruption" would be well taken if this were a complex case involving numerous coordinated actions with difficult or disparate issues; but that hypothetical situation is not presented here.[3] Petitioners are the only remaining plaintiffs in the controversy, and there is no assertion that Judge Nichols's familiarity with the facts is necessary for resolution of the remaining triable issues. We thus conclude that neither the coordination procedures outlined in the California Rules of Court nor the procedural circumstances presented here justify our disregard of the express language and underlying purpose of section 170.6(a)(2).

Disposition
Let a peremptory writ of mandate issue directing respondent court to vacate its order striking petitioners' peremptory challenge and to enter a new order accepting the challenge. The temporary stay order is dissolved. Petitioners are to recover the costs of this petition.
WE CONCUR: McADAMS and DUFFY, JJ.
NOTES
[1] Rule 3.516 (formerly rule 1515) provides:

"A party making a peremptory challenge by motion or affidavit of prejudice regarding an assigned judge must submit it in writing to the assigned judge within 20 days after service of the order assigning the judge to the coordination proceeding. All plaintiffs or similar parties in the included or coordinated actions constitute a side and all defendants or similar parties in such actions constitute a side for purposes of applying Code of Civil Procedure section 170.6."
[2] The Paterno court answered this second question in the negative: Liability having been fully decided, the determination of damages did not amount to a reexamination of contested factual or legal issues and therefore did not constitute a "new trial" for disqualification purposes.
[3] Judicial efficiency would not necessarily be compromised even if the coordinated action comprised numerous lawsuits. If only one or a few of those suits involved the issue on which reversal of a judgment occurred (whether or not followed by a disqualification motion), the coordination judge would be authorized to expedite the resolution of the actions by separately trying, transferring, or remanding any action or severable issue pursuant to California Rules of Court, rule 3.541, 3.542, or 3.543.