Filed 12/1/20 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PRESCRIPTION OPIOID CASES. | B302241 |
| | (JCCP No. 5029) |
| | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on November 25, 2020, be modified as follows:

On page 1, as part of the counsel listing for Real Parties in Interest Johnson & Johnson and Janssen Pharmaceuticals, Inc., the name O'Melveny & Meyers should be corrected to read as O'Melveny & Myers.

The sentence beginning at the bottom of page 8, and continuing to the top of page 9, is revised as follows: the word "discreet" is replaced with "discrete" (that portion of the sentence shall read, ". . . constitutes its own discrete . . .").

There is no change in the judgment.

_____

EGERTON, J.          LAVIN, Acting P. J.          DHANIDINA, J.

Filed 11/25/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| PRESCRIPTION OPIOID CASES. | B302241 |
|---|---|
| | (JCCP No. 5029) |

ORIGINAL PROCEEDINGS in mandate.  William F. Highberger, Judge.  Petition denied.

Robins Kaplan, Roman M. Silberfeld, Bernice Conn, Michael A. Geibelson, Glenn A. Danas and Lucas A. Messenger for Petitioners.

No appearance for Respondent.

O'Melveny & Meyers, Michael G. Yoder, Amy J. Laurendeau, Charles C. Lifland, Sabrina H. Strong and Jonathan P. Schneller for Real Parties in Interest Johnson & Johnson and Janssen Pharmaceuticals, Inc.

Morgan, Lewis & Bockius, Collie F. James IV and Steven A. Reed for Real Parties in Interest Teva Pharmaceutical Industries Limited, Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis LLC, Actavis Pharma, Inc. and Watson Laboratories, Inc.

Arnold & Porter Kaye Scholer, Sean Morris, John Lombardo and Tiffany Ikeda for Real Parties in Interest Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.

Covington & Burling, Nathan E. Shafroth and Raymond G. Lu for Real Party in Interest McKesson Corporation.

Reed Smith, Steven J. Boranian, Adam D. Brownrout, Eric J. Buhr, Alexis A. Rochlin and Sarah B. Johansen for Real Party in Interest AmerisourceBergen Corporation.

Baker & Hostetler and Teresa C. Chow for Real Party in Interest Cardinal Health, Inc.

Kirkland & Ellis and Zachary Byer for Real Parties in Interest Allergan PLC, Allergan Finance, LLC, Allergan, Inc. and Allergan USA, Inc.

Ropes & Gray and Rocky C. Tsai for Real Party in Interest Mallinckrodt LLC.

---

In this case we hold Code of Civil Procedure section 170.6 authorizes only one judicial peremptory challenge for each side in a Judicial Council Coordination Proceeding under rule 3.516 of the California Rules of Court.[1]  As we explain, rule 3.516 modifies the normal procedures governing section 170.6 peremptory challenges in two ways to conform the procedures to the unique characteristics of a coordination proceeding.  The rule (1) requires the party making a peremptory challenge to submit it in writing

---

[1]    Statutory references are to the Code of Civil Procedure, unless otherwise designated.  Rule references are to the California Rules of Court.

2

to the assigned judge within 20 days after service of the order assigning the judge to the coordination proceeding; and (2) specifies that all plaintiffs or similar parties constitute "a side" and all defendants or similar parties constitute "a side" for purposes of "applying Code of Civil Procedure section 170.6." (Rule 3.516.) Rule 3.516 does not displace section 170.6's fundamental directive that there shall be "only one motion for each side . . . in any one action or special proceeding." (§ 170.6, subd. (a)(4).) The trial court correctly interpreted and applied the rule. We deny the writ.

## FACTS AND PROCEDURAL BACKGROUND

Petitioners and other similarly situated California governmental entities filed actions in several counties throughout the state against Real Parties alleging claims for false advertising, nuisance, fraud, negligent failure to warn, and civil conspiracy arising out of Real Parties' manufacture and distribution of opioid products.[2]

On May 9, 2019, the Presiding Judge of the Orange County Superior Court, Judge Kirk Nakamura, under the authorization of the Chairperson of the Judicial Council, assigned Judge Peter Wilson to be the coordination motion judge. On May 29, 2019, Petitioners filed a section 170.6 peremptory challenge to disqualify Judge Wilson. On May 31, 2019, Judge Nakamura granted the peremptory challenge and reassigned the coordination motion to Orange County Superior Court Judge William Claster.

---

[2] Several of the cases were removed to federal court and transferred to a multidistrict litigation pending in Ohio. The Kern County and City of El Monte cases were remanded to state court.

3

On June 3, 2019, the California Attorney General filed a lawsuit against one of the Real Parties in Los Angeles County Superior Court. The Attorney General requested Judge Claster consider the action for coordination.

On September 6, 2019, Judge Claster granted the coordination petition as to Petitioners' actions. Judge Claster also found Los Angeles County, where two of the three coordinated actions were pending, was the appropriate venue for the coordination proceeding. On September 30, 2019, Los Angeles County Superior Court Judge William Highberger was assigned as the coordination trial judge.

On October 11, 2019, Petitioners filed a second section 170.6 peremptory challenge to disqualify Judge Highberger. Real Parties filed an objection, arguing section 170.6 and rule 3.516 allow only one peremptory challenge per side in a coordination proceeding and Petitioners had already used their challenge to strike Judge Wilson.

On October 31, 2019, Judge Highberger denied Petitioners' motion to disqualify. This writ proceeding followed.

## DISCUSSION

### 1.  *Standard of Review*

An order granting or denying a motion to disqualify is normally reviewed for an abuse of discretion. (See *People v. Superior Court* (*Maloy*) (2001) 91 Cal.App.4th 391, 395; *Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1315.) However, it is settled that a trial court lacks discretion to deny a section 170.6 motion that complies with the applicable statutory procedures. (*Bontilao v. Superior Court* (2019) 37 Cal.App.5th 980, 987; *Maas v. Superior Court* (2016) 1 Cal.5th 962, 972; *Pickett v. Superior Court* (2012) 203 Cal.App.4th 887, 892; see

4

also *Daniel V. v. Superior Court* (2006) 139 Cal.App.4th 28, 39 ["trial court abuses its discretion when it erroneously denies as untimely a section 170.6 challenge"].)  "Because the trial court exercises no discretion when considering a section 170.6 motion, it is 'appropriate to review a decision granting or denying a peremptory challenge under section 170.6 as an error of law.' " (*Bontilao,* at pp. 987–988.)  Moreover, de novo review is especially suitable in this case because the underlying material facts are not in dispute and the question to be decided is one of statutory construction.  (See *People v. Superior Court* (*Olivo*) (2019) 36 Cal.App.5th 942, 947 ["Where the underlying material facts are not in dispute, we review the trial court's order denying a peremptory challenge de novo."]; *Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 604 ["Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo."].)

"The ordinary principles of statutory construction govern our interpretation of the California Rules of Court.  [Citations.]  Our objective is to determine the drafter's intent.  If the rule's language is clear and unambiguous, it governs." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 902 (*Alan*).)  "We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1083.)  We also attempt to give meaning "to every word, phrase, sentence and part of a court rule," if possible.  (*Crespin v. Shewry* (2004) 125 Cal.App.4th 259, 265.)

**2.    *Rule 3.516 Does Not Displace Section 170.6's One-Challenge-Per-Side Limitation***

Section 170.6 permits "[a] party . . . appearing in[ ] an action or proceeding" to disqualify the assigned judge by filing a motion and sworn statement of the party's belief that the judge is prejudiced against that party or the party's attorneys.  (§ 170.6, subd. (a)(2).)  The statute specifies various deadlines for filing the motion depending on whether the case is civil or criminal, whether the judge is "assigned to the case for all purposes," whether the judge is "known at least 10 days before the date set for trial or hearing," whether the motion is "directed to the trial of a cause with a master calendar," or whether "the court in which the action is pending is authorized to have no more than one judge."  (*Ibid.*)  Regardless of which deadline applies, section 170.6 authorizes "only one motion for each side . . . in any one action or special proceeding."  (*Id.*, subd. (a)(4).)[3]

Rule 3.516 establishes special rules for applying section 170.6 in a Judicial Council Coordination Proceeding.[4]  The rule

---

[3]    Section 170.6 permits "the party who filed [an] appeal that resulted in the reversal of a final judgment of a trial court" to make an additional peremptory challenge, "[n]otwithstanding paragraph [(a)](4)," "following reversal on appeal . . . if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter."  (§ 170.6, subd. (a)(2).)

[4]    Section 404 et seq. authorizes the Chairperson of the Judicial Council to coordinate separate complex civil actions pending in different counties involving common issues of fact or law into a coordination proceeding for pretrial and trial before a single assigned judge.  Under the authority granted in the coordination statutes (see § 404.7), the Judicial Council has adopted detailed rules regulating the procedures for coordination

consists of two sentences that modify the normal procedures governing peremptory challenges to conform those procedures to the unique characteristics of a coordination proceeding.

The first sentence of rule 3.516 establishes the deadline for filing a peremptory challenge: "A party making a peremptory challenge by motion or affidavit of prejudice regarding an assigned judge must submit it in writing to the assigned judge within 20 days after service of the order assigning the judge to the coordination proceeding." (Rule 3.516.) Because the process for assigning a judge to a coordination proceeding "is a complex and time consuming process, . . . the Judicial Council . . . extended the time for filing a disqualification motion to 20 days after service of the coordination order." (*School Dist. of Okaloosa County v. Superior Court* (1997) 58 Cal.App.4th 1126, 1135; cf. *Sunrise Financial, LLC v. Superior Court* (2019) 32 Cal.App.5th 114, 128 (*Sunrise Financial*) [because case did not involve Judicial Council assignment under section 403, and independent calendar judge had already been assigned for all purposes, normal 15-day deadline under section 170.6, subdivision (a)(2) applied].)

The rule's second sentence specifies how "a side" is defined for purposes of applying section 170.6 in a coordination proceeding consisting of two or more coordinated actions: "All plaintiffs or similar parties in the included or coordinated actions

---

proceedings. Those rules appear at rules 3.501 through 3.550. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶¶ 12:370 to 12:375.)

7

constitute *a side* and all defendants or similar parties in such actions constitute *a side* for purposes of applying Code of Civil Procedure section 170.6." (Rule 3.516, italics added.)[5]  Thus, while a coordination proceeding includes multiple coordinated actions, often brought by many plaintiffs against many defendants, rule 3.516 specifies that all the plaintiffs and all the defendants in those multiple actions each collectively constitute one "side" for purposes of applying section 170.6.  Apart from this specification, there is no other explicit instruction in rule 3.516 regarding the statutory directive that there shall be "only one motion for *each side* . . . in any one action or special proceeding." (§ 170.6, subd. (a)(4), italics added.)

Petitioners contend rule 3.516 makes an additional change to section 170.6, but they say we must look to the definitions in rule 3.501 to discern it.  Petitioners emphasize rule 3.501(8) defines " 'Coordination proceeding' " to mean "*any procedure* authorized by [section 404 et seq.] and by the rules in this chapter." (Italics added.)  Because the Judicial Council used the phrase "any procedure" to define the term " 'Coordination proceeding' " (rule 3.501(8)), Petitioners maintain the definition must be read to mean that each "procedure" authorized under the coordination statutes constitutes its own discreet "coordination proceeding," including the assignment of the coordination motion

---

[5]     Rule 3.501(5) defines " 'Coordinated action' " as "any action that has been ordered coordinated with one or more other actions under" section 404 et seq.  Rule 3.501(8) defines " 'Coordination proceeding' " as "any procedure authorized by [section 404 et seq.] and by the rules in this chapter."

judge (see § 404.4) and the assignment of the coordination trial judge (see § 404.3).  In other words, Petitioners argue "different judicial assignments for different purposes are discrete *coordination proceedings* within the umbrella of [a Judicial Council Coordination Proceeding]."  (Italics added.)  And, because the Judicial Council used the term "coordination proceeding" in the first sentence of rule 3.516 to fix the deadline for filing a peremptory challenge, Petitioners argue the rule "authorizes peremptory challenges for *each* of these distinct 'coordination proceedings,' " "entitling a party to separate judicial challenges," "so long as the challenges are made within 20 days of the [judicial] assignment."

The relevant rules and statutes are not reasonably susceptible of this interpretation.

Our Supreme Court has long recognized the one-challenge-per-side limitation in section 170.6 is a critical safeguard to prevent " 'a device intended for spare and protective use' " from being " 'converted into a weapon of offense and . . . obstruction to efficient judicial administration.' "  (*Solberg v. Super. Ct. of City & Cty. of S.F.* (1977) 19 Cal.3d 182, 197–198; accord *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1252–1253.)  "[S]ection 170.6 is designed to prevent abuse by parties that merely seek to delay a trial or obtain a more favorable judicial forum.  [Citations.]  An important element of that design is the limitation, in any one action, of each party to a single motion, or each side to a single motion, should there be more than one plaintiff or defendant. . . .  This limitation also reflects the general aim of the legislation to strike a balance between

9

the needs of litigants and the operating efficiency of the courts. [Citation.] [¶] To effectuate the Legislature's intent, our courts 'have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted.' " (*The Home Ins. Co. v. Superior Court* (2005) 34 Cal.4th 1025, 1032–1033 (*Home Ins.*).)

Petitioners contend the legislative design of section 170.6 is irrelevant to a reasonable construction of rule 3.516. They emphasize that, with the enactment of section 404.7, "the Legislature expressly authorized the Judicial Council 'to formulate its own rules for judicial challenges independent of the provisions of section 170.6.' " (See *Industrial Indemnity Co. v. Superior Court* (1989) 214 Cal.App.3d 259, 264 (*Industrial Indemnity*).) And, as discussed, Petitioners maintain the Judicial Council did just that—it created a new rule, displacing the one-challenge-per-side limitation, by adopting rule 3.516 and linking the deadline for making a peremptory challenge to the term "coordination proceeding" as defined in rule 3.501(8). We are not persuaded.

It is a settled rule of statutory construction, applicable to the Rules of Court adopted by the Judicial Council, that "it is not to be presumed that the legislature in the enactment of statutes, or the people in the adoption of laws, intend to overturn long-established legal principles, unless such intention is made to *clearly appear* by *express declaration* or by *necessary implication*." (*Follette v. Pacific Light & Power Corporation* (1922)189 Cal. 193, 208, italics added; accord *In re Guardianship of Thrasher* (1951) 105 Cal.App.2d 768, 777; see *Alan, supra,* 40 Cal.4th at p. 902;

10

cf. *Subsequent Injuries Fund v. Industrial Acc. Com'n* (1963) 59 Cal.2d 842, 844 ["Where the amendment of a statute consists of the deletion of an express provision, the presumption is that a substantial change in the law was intended."].)  As we have explained, the one-challenge-per-side limitation is an "important element" of section 170.6's statutory design.  (*Home Ins., supra,* 34 Cal.4th at p. 1032.)  It is essential "to prevent abuse by parties that merely seek to delay a trial or obtain a more favorable judicial forum," and courts must be " 'vigilant to enforce' " it. (*Id.* at pp. 1032–1033.)  Because the limitation is critical to effectuating section 170.6's legislative purpose, we cannot accept that the Judicial Council would have overturned it in the circuitous and oblique way Petitioners suggest.  Had the Judicial Council intended to make such a fundamental change to the established rules governing judicial peremptory challenges, we must presume the Council would have done so only "by express declaration or by necessary implication." (*Follette*, at p. 208.)

There is plainly no express declaration in rule 3.516 overturning the one-challenge-per-side limitation.  Nor does the term "coordination proceeding" annul the limitation by necessary implication.  As we have discussed, on its face, the first sentence of rule 3.516 merely establishes a deadline for filing a peremptory challenge "within 20 days after service of the order assigning the judge to the coordination proceeding."  (Rule 3.516.)  While this language can account for two separate orders assigning different judges to a coordination proceeding—one for the coordination motion judge and one for the trial judge—the language does not necessarily imply that each side gets a separate peremptory

11

challenge for each judicial assignment. On the contrary, we construe this language to require a side to file a peremptory challenge within 20 days of *either* the assignment of the coordination judge *or* the assignment of the trial judge, but we do not read it to displace the one-challenge-per-side limitation, which remains an "important element" of section 170.6's statutory design. (*Home Ins., supra,* 34 Cal.4th at p. 1032.)

Our construction is consistent with the normal operation of the one-challenge-per-side limitation in civil actions generally. Under section 170.6, litigants are permitted to choose from multiple potential triggers for a peremptory challenge—e.g., assignment of the trial judge, assignment of the judge for all purposes, or commencement of a hearing. (See § 170.6, subd. (a)(2).) However, notwithstanding these various triggers, the statute mandates that there shall be "only one" peremptory challenge for each side "in any one action or special proceeding"— not separate challenges each time a triggering event occurs. (*Id.,* subd. (a)(4).)[6] We presume that the Judicial Council "was aware

---

[6] As the trial court observed, "[i]t is commonplace that in a master-calendar docket management system any number of jurists may make rulings during the life of a case on matters such as demurrers, discovery motions, requests for interim injunctive relief, potentially dispositive motions, and trials. A party may, if he, she or it wishes, use a challenge under [section] 170.6 on the occasion of any of these events . . . but the upshot of doing so is that the party will lack an available challenge for the balance of the case's life . . . but that is the lawyer's choice." Nothing in rule 3.516 suggests the Judicial Council intended to treat coordination proceedings any differently.

of existing related laws" when it enacted rule 3.516, and that it "intended to maintain a consistent body of rules." (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199; cf. *Paterno v. Superior Court* (2004) 123 Cal.App.4th 548, 555 (*Paterno*) [Since rule 3.516 predecessor's "provisions for exercising a peremptory challenge upon initial assignment may be harmonized with section 170.6(a)(2)'s postappeal right to peremptory challenge, the latter is simply one of the 'provisions of law applicable to civil actions generally,' which still retains vitality in coordination proceedings."].)

Petitioners principally rely upon *Stone v. Superior Court* (1994) 25 Cal.App.4th 1144 (*Stone*). The case supports our construction of rule 3.516. In *Stone,* the plaintiff elected not to challenge the coordination motion judge, who later coordinated the plaintiff's action with other factually related cases. (*Stone,* at p. 1146.) When the same judge was appointed to be the coordination trial judge, the plaintiff filed a peremptory challenge within 20 days of receiving the appointment order. (*Ibid.*) The judge denied the challenge on the ground it was untimely, reasoning that rule 3.516 "require[ed] any peremptory challenge to be filed within twenty days of his *first* assignment" because that was when he became an " 'assigned judge' " under the rule. (*Stone,* at p. 1147, italics added.)[7] The reviewing court disagreed.

---

[7]     *Stone* was decided under a substantively identical predecessor to rule 3.516. (See *Stone, supra,* 25 Cal.App.4th at p. 1146 [quoting former rule 1515].)

The *Stone* court reasoned that requiring a party to file a peremptory challenge within 20 days of the "first" judicial assignment would not sufficiently protect a party's rights under section 170.6, because a party could not reasonably be expected "to predict whether the judge assigned as the coordination motion judge will also be assigned as the coordination trial judge." (*Stone, supra,* 25 Cal.App.4th at p. 1147.) The court explained, "the statutory scheme for coordination and the rules of court implementing that scheme provide for two separate assignments" and "contemplate the possibility these two assignments will be of two different judges." (*Ibid.*) In view of this possibility, the *Stone* court concluded "the term 'assigned judge' " in rule 3.156 "must be read as the judge assigned for the particular purpose, i.e., either to determine whether coordination is appropriate or to hear and determine the coordinated actions." (*Stone*, at p. 1147.) Under that construction, "a party challenging the assignment of a judge pursuant to Code of Civil Procedure section 170.6 has 20 days after the specific assignment to file an affidavit of prejudice." (*Ibid.*)

Contrary to Petitioners' contention, *Stone* neither states nor implies that rule 3.516 authorizes more than one peremptory challenge per side. The case merely holds the assignment of the coordination motion judge and the assignment of the coordination trial judge constitute separate triggers for filing a disqualification motion within the prescribed 20-day period, and the election not to challenge the assigned coordination motion judge does not preclude a party from later moving to disqualify the assigned coordination trial judge—even if the same judge happens to be

14

assigned for both purposes.  (*Stone, supra,* 25 Cal.App.4th at p. 1147.)  That holding is consistent with the normal operation of the one-challenge-per-side limitation, which allows a party to reserve its peremptory challenge for a subsequent triggering event, even when the party could have exercised its challenge against a previously assigned judge.  The holding is also consistent with our construction:  Under rule 3.516 a side must file a peremptory challenge within 20 days of *either* the assignment of the coordination motion judge *or* the assignment of the coordination trial judge, but it cannot file a challenge against both judges.  (See *Sunrise Financial, supra*, 32 Cal.App.5th at p. 128 ["The *Stone* court held a party challenging the assignment of a complex-case coordination judge (§ 404) pursuant to section 170.6 must file the challenge within 20 days after *either* the assignment of the judge ruling on the complex-case consolidation motion *or* the assignment of the judge to preside over the merits of the cases."]; *Philip Morris Inc. v. Superior Court* (1999) 71 Cal.App.4th 116, 123 [citing *Stone*, observing rule 3.516's "second sentence means that once a coordination motion judge or a coordination trial judge is assigned, the plaintiff and defense sides in any included action or coordinated action, respectively, are entitled to only one section 170.6 peremptory challenge each"].)

　　Finally, as past cases have observed, the overriding purpose of rule 3.516 "is to exclude add-on parties from the right to peremptorily challenge the coordination trial judge." (*Industrial Indemnity, supra,* 214 Cal.App.3d at p. 263; accord

15

*Paterno, supra,* 123 Cal.App.4th at p. 554; see also *Jane Doe 8015 v. Superior Court* (2007) 148 Cal.App.4th 489, 497–498 ["The 20-day time limit and the collective denomination of a 'side' in rule 3.516 preclude a succession of challenges that would delay the efficient resolution of coordinated actions."].) As the trial court observed in denying Petitioners' disqualification motion, it is "counter-intuitive" to read a rule that explicitly *narrows* an add-on party's right to bring a peremptory challenge to nonetheless *expand* the number of peremptory challenges available in a coordination proceeding.[8] The trial court properly denied Petitioners' second disqualification motion.

[8] Notwithstanding our construction of rule 3.516, Petitioners contend we should nevertheless reverse the trial court's order because they "reasonabl[y] reli[ed]" on a handful of secondary sources suggesting peremptory challenges are available at both the coordination motion stage and coordination trial stage of a coordination proceeding. The argument has no merit. Retrospective application of a statutory interpretation is appropriate where, as here, the interpretation does not involve " 'unforeseeable judicial expansion of the statutory language.' " (*County of San Diego v. State Bd. of Control* (1984) 161 Cal.App.3d 868, 870.) Even a party's reliance on the decision of an "inferior" appellate court is no "basis to depart from the assumption of retrospective operation." (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 536 [retrospective operation of Supreme Court's statutory interpretation did not violate due process, even though defendant had relied upon appellate court interpretation, for which review had been denied, in establishing corporate policy].) Petitioners' reliance upon a handful of secondary sources is even less reason to depart from the usual rule of retrospective operation. (See *Earl W. Schott, Inc. v. Kalar* (1993) 20 Cal.App.4th 943, 946, fn.4 ["Secondary

## DISPOSITION

The writ is denied.  Real Parties are entitled to their costs.

**CERTIFIED FOR PUBLICATION**


                                        EGERTON, J.

We concur:



        LAVIN, Acting P. J.



        DHANIDINA, J.

---

authority can never be mandatory authority; it can only be persuasive."].)

17